***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments of the parties. The plaintiff has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Donovan's August 13, 2010 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether plaintiff sustained an injury by accident to his left knee? *Page 2 
2. Whether plaintiff's left knee claim is causally related to plaintiff's compensable claim?
3. Whether plaintiff's need for surgery is causally related to the compensable claim?
4. Whether defendants wrongfully denied plaintiff's request for treatment of his left knee?
5. Whether plaintiff is entitled to sanctions pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is February 4, 2008, and defendants filed I.C. Forms acknowledging a compensable injury to the back on February 28, 2008.
2. On such date, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the Industrial Commission has jurisdiction over the parties and the subject matter.
3. On such date, an employee-employer relationship existed between plaintiff and defendant-employer.
4. On such date, defendant-employer employed three or more employees.
5. Defendant-employer is insured by American Interstate Insurance Company.
6. Plaintiff's average weekly wage is $993.86, yielding a compensation rate of $662.61 per week. *Page 3 
7. Plaintiff received medical treatment in the form of surgical intervention for his lower back which has been authorized and provided by defendants.
8. As a result of the injury to plaintiff's back, he continues through the date of the hearing to be disabled and receives payment of temporary total disability benefits from defendants.
 *********** EXHIBITS
The parties stipulated the following documentary evidence:
 1. Stipulated Exhibit #1: I.C. Forms, medical records, discovery responses, utilization review.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 56 years old. Plaintiff began working for defendant-employer in 2008, transporting petroleum via truck from terminals to gas stations. He has completed the 11th
grade and has worked as a truck driver over the past 30 years.
2. On February 4, 2008, plaintiff was attempting to connect a fuel hose to a truck. He picked up the hose with both hands, and pulled to align it with the truck, which was on his right side. While moving in a backward motion and bringing the hose down, the hose became filled with fuel and the increased weight caused plaintiff to pivot and twist to the right to place the hose on the truck nozzle. At that time, his left knee buckled and he had a feeling of electric shock *Page 4 
in his lower back, radiating into his legs. Plaintiff did not fall to the ground or experience any impact injuries to his legs.
3. Plaintiff reported the incident to his employer and continued to work. On February 28, 2008, defendants accepted plaintiff's claim pursuant to a Form 60 and began to provide medical and indemnity benefits.
4. Subsequent to the February 4, 2008 incident, plaintiff experienced weakness in his legs and foot drop in his right foot. Plaintiff testified that sometime late in February 2008, his right foot drop caused him to trip over the edge of a fuel cover. As a result, plaintiff fell forward and landed on both his knees. This trip and fall incident caused plaintiff to take four days off from work during which time he experienced an increase of pain and swelling in his left knee, and an overall increase in back pain. Plaintiff did not report this incident to defendant-employer. Approximately two weeks after this fall plaintiff stopped working.
5. Plaintiff presented to Chiropractor DC Philip Mahan of South Main Chiropractic Wellness on February 12, 2008. He complained of pain in the head and neck region with stiffness. DC Mahan confirmed that plaintiff had reported difficulty walking due to pain and weakness in his left leg, but he did not examine plaintiff's left knee.
6. Plaintiff continued to treat with Dr. Mahan through March 18, 2008, experiencing some improvement in his back and neck pain as well as in his ability to bend, sit, and stand. Throughout his course of treatment, plaintiff did not report any slip and fall injuries to Dr. Mahan. Plaintiff did continue to experience radiating pain in his leg which did not improve. Accordingly, on March 18, 2008, Dr. Mahan recommended plaintiff obtain a second opinion regarding the continuing leg pain. *Page 5 
7. Up until this time, plaintiff's medical care was being paid directly by his employer without the participation of defendant-carrier. On March 24, 2008, plaintiff informed Dr. Mahan that because of the referral, defendant-employer had decided to make it a workers' compensation claim, and the adjustor was sending him to another treating physician.
8. On March 13, 2008, plaintiff presented to MedZone Occupational Health Urgent Care complaining of back pain and pain in both legs. Plaintiff reported a trip and fall injury which caused back and knee pain. He was diagnosed with back pain and radicular symptoms. At that time, plaintiff's left leg pain was determined to be referred back pain. Plaintiff had full range of motion in the left knee with no swelling.
9. On April 1, 2008, plaintiff returned to MedZone with complaints of back pain, left knee pain, and right leg numbness. Brandon Rorie, P.A., who saw plaintiff on that date, opined that plaintiff's left knee pain was "mostly referred from the back." Plaintiff's left leg pain was "more of a muscular type pain, as in like a pulled hamstring." The mechanism of injury as described by plaintiff was that he had lifted a spring-loaded door on which the spring had broken, causing him to develop back pain. The pain went into both of plaintiff's knees and he tripped and put extra pressure on the front leg. Plaintiff was diagnosed with persistent lumbar pain, a left hamstring strain, and right lower extremity pain and paresthesias. P.A. Rorie did not make any diagnoses regarding plaintiff's complaints of left knee pain. A lumbar MRI was recommended and plaintiff was limited to sedentary work with no driving.
10. During office visits on March 13, 2008, and April 1, 2008, P.A. Rorie confirmed that plaintiff reported pain in his left knee due to an accident at work.
11. On April 17, 2008, plaintiff presented to Dr. David Janeway of Triad Orthopedic for evaluation of his MRI and an orthopedic consult. Plaintiff provided a history of lifting an *Page 6 
object on February 4, 2008, then twisting his back with immediate pain down his legs. When plaintiff presented to the receptionist at the office, plaintiff was told by the receptionist that he was there only for Dr. Janeway to review plaintiff's lumbar MRI. Plaintiff had questions regarding the intake form, plaintiff was instructed by Dr. Janeway's receptionist to only list one condition on the intake form, and was instructed that when he went into the examination room to tell Dr. Janeway about his knee. Plaintiff therefore only noted his back complaints on the intake form and made no notes regarding his left knee pain. Dr. Janeway's notes from the April 17, 2008 visit indicate that plaintiff had complained to him of pain in both legs.
12. Dr. Janeway reviewed plaintiff's MRI which he opined demonstrated a small spinal canal, superimposed degenerative changes, moderate central canal and bilateral subarticular recessed stenosis at L3-4 and L4-5, broad based right foraminal far lateral disc protrusion with marginal osteophytes, and moderate foraminal stenosis and compression of the L4 nerve root. Dr. Janeway further opined that at S1 there was moderate left foraminal stenosis and possible impingement on the left nerve root. Dr. Janeway recommended an evaluation with Dr. Harlan B. Daubert with Orthopaedic Specialist of the Carolinas to determine the need for surgery.
13. Plaintiff presented to Dr. Daubert on May 6, 2008, with complaints of back pain following a work-place injury in February 2008. Dr. Daubert opined that plaintiff's X-rays demonstrated spondylosis with disc resorption at L4-5. He noted that plaintiff's MRI scan confirmed right-sided foraminal narrowing consistent with his right hip and leg pain. Dr. Daubert recommended a series of epidural steroid injections and physical therapy two times a week for four to six weeks for back range of motion, strengthening, hamstring stretching, and core strengthening. *Page 7 
14. Dr. Daubert confirmed that plaintiff complained of give-way sensation, or buckling, in both his right and left lower extremities. Dr. Daubert testified that plaintiff's give-way sensation could cause him to fall. Dr. Daubert attributed plaintiff's falls to the give-way sensation resulting from plaintiff's back condition.
15. Plaintiff's physical therapy notes, starting May 22, 2008, indicate that plaintiff continued to complain of left knee pain throughout the time period that plaintiff was undergoing the physical therapy treatment.
16. On July 11, 2008, plaintiff was recommended for a CT Myelogram of the lumbar spine, which was evaluated by Dr. Daubert on November 13, 2008. Dr. Daubert opined that the CT scan confirmed central foraminal stenosis at L3-4 with significant spondylosis at L4-5 and some left sided lateral stenosis at L4-5. Dr. Daubert recommended surgical decompression and fusion surgery, which was performed on March 23, 2009.
17. On May 11, 2009, plaintiff returned to Dr. Daubert and reported his leg pain had improved, but that he still having left foot drop and was unable to dorsiflex his left toes. X-rays revealed satisfactory healing and plaintiff was referred to Dr. Janeway for an evaluation of plaintiff's knee. This is the first time plaintiff's knee was evaluated due to plaintiff's complaints of knee pain.
18. On June 25, 2009, plaintiff returned to Dr. Janeway with complaints of left knee pain and giving way. Dr. Janeway found full range of motion with mild diffuse tenderness, especially in the patella-femoral joint and the hamstring. He noted that plaintiff's knee was stable, neurologically intact, and had 5 out of 5 strength. Dr. Janeway opined plaintiff may have possible chondral lesion or loose fragment in the joint and recommended an MRI. Dr. Janeway further noted that he reviewed all of his medical records and none included an instance of blunt trauma to *Page 8 
the knee or a trip and fall that would have caused trauma to the knee or would exacerbate plaintiff's degenerative condition. Dr. Janeway acknowledged however, that he did not review the physical therapy notes that indicate plaintiff's complaints of left knee pain, nor did Dr. Daubert review the note from MedZone which indicated plaintiff complained of left knee pain.
19. Plaintiff returned after the MRI on August 27, 2009, which revealed plaintiff had mechanical symptoms of arthritis in the knee, and had the appearance of loose bodies and chondral fissuring. Dr. Janeway recommended knee arthroscopy.
20. Dr. Janeway opined that plaintiff's condition was degenerative in nature, but noted that a direct blow to the knee can exacerbate that type of condition. Dr. Janeway remained adamant that plaintiff had never reported trauma to the knee and had no prior complaints regarding his knee. After reviewing the physical therapy notes which indicated plaintiff had prior complaints of knee pain, Dr. Janeway opined that the fall "may or could" have aggravated or contributed to the condition in plaintiff's left knee.
21. Dr. Janeway confirmed that the findings found on the physical exam and the MRI would be consistent with the type of fall plaintiff experienced.
22. On February 4, 2008, plaintiff suffered a work-related injury by accident resulting in an injury to his back which ultimately necessitated surgery. As a result of the back injury, plaintiff experienced radiating pain and weakness in his legs.
23. The Full Commission finds plaintiff's testimony regarding the February 4, 2008 compensable injury, the fall plaintiff experienced later in February 2008, and his complaints of left knee symptoms to be credible.
24. The Full Commission finds by the greater weight of the evidence that plaintiff suffered a separate fall injury later in February of 2008, causally connected to the February 4, *Page 9 
2008 compensable back injury, and the fall resulted in an aggravation or exacerbation of his degenerative arthritic condition in his left knee.
25. The Full Commission finds the greater weight of the medical evidence of record indicates that plaintiff's present left knee condition, and any necessary medical treatment related thereto, are causally related to plaintiff's injury by accident on February 4, 2008.
26. Plaintiff's average weekly wage is $993.86, yielding a compensation rate of $662.61 per week.
27. The Full Commission finds that there is insufficient evidence that defendants have defended this claim unreasonably.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of the employment on February 4, 2008. N.C. Gen. Stat. § 97-2(6).
2. There is sufficient medical evidence of record upon which to find that plaintiff's aggravated left knee condition for which he seeks treatment is the direct and natural result of and causally related to his February 4, 2008 compensable injury by accident. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980).
3. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the *Page 10 
compensable February 4, 2008 injury by accident, including all treatment for plaintiff's left knee condition, to include the surgery recommended by Dr. Janeway, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
4. Defendants have not defended this claim unreasonably. Plaintiff is not entitled to sanctions pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Plaintiff's left knee condition is compensable, and defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
2. Defendants shall pay the costs.
This the 25th day of February, 2011.
 S/_________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 11 
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ LINDA CHEATHAM COMMISSIONER *Page 1